## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEDECISION, INC.** | **CIVIL ACTION NO.** |
| Plaintiff; | |
| v. | **JUDGE** |
| **GULF SOUTH QUALITY NETWORK – NEW ORLEANS, L.L.C.** | **MAG. JUDGE** |
| Defendant. | **SECTION** |

### COMPLAINT FOR DAMAGES AND FOR DECLARATORY JUDGMENT

Plaintiff, Medecision, Inc. ("Medecision"), files this Complaint against defendant, Gulf South Quality Network – New Orleans, L.L.C. ("GSQN"), seeking damages for GSQN's breach of a Software Subscription and Professional Services Agreement (the "Agreement") entered into by the parties and a judgment declaring Medecision's rights and GSQN's obligations under that Agreement.

### PARTIES, JURISDICTION, AND VENUE

1.

Medecision is a corporation organized under Pennsylvania law with its principal place of business in Delaware County, State of Pennsylvania.

2.

GSQN is a limited liability company organized under Louisiana law. On information and belief, each of GSQN's members is a citizen of the State of Louisiana. GSQN's principal place of business is in Metairie, Louisiana.

{N3184265.4}

3.

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.

This Court has personal jurisdiction over GSQN because GSQN is organized under Louisiana law and has its principal place of business in Louisiana. Moreover, the Agreement at issue in this case was in substantial part negotiated and performed in Louisiana.

5.

Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and (2), because GSQN "resides" in this district as that term is defined in 28 U.S.C. § 1391(c)(2), and because a substantial part of the events or omissions giving rise to Medecision's claim occurred in this district. Moreover, jurisdiction and venue are proper because the Agreement provides that any action related to it be brought in New Orleans, Louisiana.

**FACTS**

6.

GSQN is the successor by name change to Gulf South Quality Network, L.L.C., a Louisiana limited liability company that operates as a physician network comprised of physicians affiliated with several Louisiana-based hospitals.

7.

Medecision provides technology based solutions to its clients who are primarily payors or providers of healthcare. Among other things, Medecision provides subscription access to its proprietary population health management software.

8.

On December 1, 2014, Medecision and GSQN executed the Agreement, a true and correct copy of which, along with all incorporated Appendices, Schedules, and Statements of Work ("S.O.W."), is attached to this Complaint as Exhibit A.

9.

Under the Agreement, Medecision agreed to provide certain technology "Solutions" and related "Services" to GSQN, as detailed in the Schedules attached to and incorporated into the Agreement. Ex. A §§ 1.1–1.2. Among other things, the Solutions provided to GSQN included subscription access to the functionality of Medecision's software, which was intended by the parties to "support growing care management and care coordination needs for the 1600 providers and 3 nurse coordinators" associated with GSQN. *Id.* S.O.W. S001 ¶ 3. The Services, on the other hand, included, among other things, providing "Technical Support" and "Business Support" to GSQN—that is, making Medecision personnel available to answer questions and perform troubleshooting "from a systems/operations maintenance perspective" and to answer "'how to' questions about the functioning of the Solutions." *Id.* Sch. 1.

10.

Medecision also agreed to certain specific and limited warranties relating to its provision of the Solutions and Services. For instance, Medecision "represent[ed] and warrant[ed]" that the Solutions would "perform substantially in accordance with the applicable Schedules, and to the extent not inconsistent therewith, their Documentation." *Id.* App'x B § 1-3(a). In addition, Medecision represented and warranted that "each of [the] employees, agents and subcontractors" that would be assigned to perform the Services "ha[d] the proper skill, training, and experience to perform the Services." *Id.* App'x B § 1-3(b).

11.

Aside from these and the other express warranties listed in § 1-3 of Appendix B of the

Agreement, however, the Agreement was explicit that Medecision's provision of the Solutions

and Services was subject to no other warranties:

> EXCEPT AS OTHERWISE EXPRESSLY STATED IN
> THE AGREEMENT … , NO WARRANTY, EXPRESS OR
> IMPLIED, OF ANY KIND IS MADE WITH RESPECT TO THE
> SOLUTIONS AND SERVICES PROVIDED HEREBY, THE
> FUNCTIONALITY OF THE SOFTWARE OR THE UTILITY OF
> THE PROCESSED WORK. WITHOUT LIMITING THE
> GENERALITY OF THE FOREGOING, NO WARRANTIES
> ARE MADE REGARDING THE FITNESS OF THE
> PROCESSED WORK FOR ANY PURPOSE, THE ACCURACY
> OF ANY INFORMATION DELIVERED TO THE CUSTOMER,
> THE UTILITY OF THE SOLUTIONS OR SERVICES OR THE
> LACK OF INFRINGEMENT WITH THE RIGHTS OF OTHERS
> OF ANY OF THE LICENSED PROPERTY. EXCEPT TO THE
> EXTENT OTHERWISE EXPRESSLY STATED, ALL
> LICENSED PROPERTY AND PROCESSED WORK IS
> LICENSED, MADE AVAILABLE OR DELIVERED WITH ALL
> FAULTS AND DEFECTS, AND THE ENTIRE RISK AS TO
> THE USE THEREOF IS WITH THE CUSTOMER.
> CUSTOMER'S SOLE REMEDY WITH RESPECT TO ANY
> DEFECTIVE PROCESSED WORK SHALL BE TO REQUIRE
> MEDECISION TO REPERFORM THE WORK AT NO COST
> TO CUSTOMER.

*Id.* App'x B § 1-3.

12.

To facilitate Medecision's provision of the Solutions and Services, GSQN agreed that it

would "provide all equipment, including computers, telecommunications equipment, and

connectivity necessary to utilize the Solution, receive the Processed Work and to receive the

Services," and that "each person proposed to utilize the Solutions" would have "available to

them" equipment capable of accessing and utilizing the Solutions. *Id.* §§ 3.3, 3.6.

13.

Moreover, in exchange for Medecision's provision of the Solutions and Services, GSQN agreed to pay the monthly "Fees for each Solution and Service," the amounts of which were set out on the relevant Schedules. *Id.* § 4.1. Under § 4.1 of the Agreement, Medecision was to issue invoices reflecting these Fees. In that same section, GSQN specifically agreed that it would pay the invoices issued by Medecision "within thirty (30) days of invoice date." *Id.*

14.

GSQN further agreed that it was contractually bound to timely pay Medecision's invoices even if it wished to dispute Medecision's performance under the Agreement. In the event that GSQN disputed any aspect of Medecision's performance or Fees, the Agreement provided that GSQN "shall not withhold or 'setoff' any amounts due hereunder for any reason." *Id.* Instead, GSQN was required to pay the invoices issued by Medecision, and then engage in a good-faith attempt to resolve the dispute and determine whether it was entitled to recoup any of the amounts paid:

> Upon payment of Fees and written notification of dispute by [GSQN], Medecision and [GSQN] will work in good faith to resolve the dispute. In the event the dispute results in monies owed to [GSQN], Medecision will issue a credit memo for the balance to be applied by [GSQN] against future billings.

*Id.*

15.

The parties agreed that if GSQN violated § 4.1 by withholding payment of the invoices for any reason, Medecision would have "the right to terminate access to the Solution and to cease to provide Services or deliver Processed Work until all amounts due are paid in full." *Id.*

16.

Finally, the parties agreed that "[a]ny late payment" on GSQN's part would entitle Medecision to recover "any costs of collection (including reasonable legal fees) and shall bear interest at" the rate of 1.5% per month until paid. *Id.*

17.

Following execution of the Agreement, Medecision performed its contractual obligations, providing the Solutions and Services to GSQN.

18.

GSQN, however, has not paid the Fees that it contractually bound itself to pay.

19.

In particular, Medecision has issued invoices to GSQN totaling $836,576.59. Under § 4.1 of the Agreement, GSQN was required to pay in full each of these invoices within 30 days of the date on which it was issued. To date, however, GSQN has made no payments on the invoices.

20.

Furthermore, and despite Medecision's repeated requests, GSQN has failed even to explain on what basis it is withholding payment.

**COUNT ONE**

**<u>BREACH OF CONTRACT</u>**

21.

Medecision incorporates by reference each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

22.

Under the Agreement, GSQN undertook an obligation to pay Fees for the Solutions and Services provided by Medecision.

23.

Despite being invoiced for Fees in the amount of $836,576.59, GSQN has failed to pay any of the invoiced amount.

24.

This failure has resulted in damages to Medecision, entitling Medecision to recover the amount of the unpaid invoices, as well as the costs of collection, reasonable attorneys' fees, and interest, all as provided for in § 4.1 of the Agreement.

**COUNT TWO**

**<u>DECLARATORY JUDGMENT</u>**

25.

Medecision incorporates by reference each of the allegations in the preceding Paragraphs as if fully set forth in this Paragraph.

26.

An actual controversy exists between Medecision and GSQN regarding Medecision's current entitlement to its unpaid Fees. Thus, in accordance with Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Medecision seeks a declaratory judgment regarding GSQN's contractual obligation to immediately pay Medecision's invoices, notwithstanding any dispute that GSQN might have regarding the amount of the Fees or the adequacy of Medecision's performance under the Agreement.

27.

Section 4.1 of the Agreement provides that, to the extent that GSQN disputes Medecision's Fees or the adequacy of Medecision's performance under the Agreement, GSQN first must pay the full amount of the Fees as invoiced, and then must engage in an extra-judicial,

good-faith attempt at resolving the dispute. If resolution of the dispute reveals that GSQN is owed money by Medecision, the amount owed may at that point be credited to GSQN.

28.

Medecision is therefore entitled to a judgment declaring that, to the extent that GSQN for any reason disputes Medecision's Fees or the adequacy of Medecision's performance under the Agreement, GSQN nonetheless must comply with § 4.1: it must first pay Medecision's Fees as invoiced, and then it may engage in an extra-judicial, good-faith attempt at resolving the dispute. However, any attempt by GSQN to make a payment dispute the subject of a legal action or claim before GSQN pursues these contractually required steps would be premature.

**PRAYER FOR RELIEF**

For the reasons above, Medecision prays for relief as follows:

1.     For damages in the amount of $836,576.59, plus the costs of collection, reasonable attorneys' fees, and interest, as provided in § 4.1 of the Agreement;

2.     For a judicial determination and declaration that, in accordance with § 4.1 of the Agreement, if GSQN for any reason disputes Medecision's Fees or the adequacy of Medecision's performance under the Agreement, GSQN nonetheless must pay Medecision's Fees as invoiced, and then engage in an extra-judicial, good-faith attempt at resolving the dispute, before making the dispute the subject of a legal action or claim; and

3.     For such additional and further relief, in law and equity, as the Court may deem just and proper.

Respectfully submitted,


*/s/ Covert J. Geary*
COVERT J. GEARY (# 14280)
ANDREW R. LEE (# 21196)
JOSEPH C. DAVIS  (# 35743)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
(504) 582-8000
(504) 589-8276 fax
cgeary@joneswalker.com
alee@joneswalker.com
jdavis@joneswalker.com

**Attorneys for Medecision, Inc.**